## ANODIZING, INC.,
*Respondent,*
*v.*
## OK DELIVERY SYSTEM, INC.,
*Appellant.*

(A7809-14503, CA 15591)

613 P2d 41

Robert R. Hollis, Portland, argued the cause for appellant. With him on the briefs was Kerry D. Montgomery, Portland.

Duane A. Bartsch, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

This appeal involves a dispute as to which of two tariffs (and the classification therein), the local tariff or the national tariff, applies to the shipment of a quantity of aluminum products by common motor carrier.

Plaintiff, a manufacturer and shipper, brought an action in the Circuit Court of Multnomah County against defendant, a motor carrier operating in the city of Portland and elsewhere in Oregon, to recover some $10,930 in claimed motor common carrier overcharges. The goods shipped by plaintiff are called aluminum extrusions and are a product which results from an ingot of molten aluminum being forced over and through a die which forms the aluminum into a definite shape. These shapes are then cut into various smaller shapes and lengths before sale and shipment.

Defendant carrier appeals from a money judgment in the above amount in favor of plaintiff, assigning as error the finding that the items in question were properly classified as aluminum lineal shapes NOI and in concluding that the applicable rating thereon was in the national classification, rather than the local tariff filed with and approved by the Oregon Public Utility Commissioner.

The essential facts may be summarized as follows: Between September, 1972, and October, 1977, defendant OK Delivery System, Inc., a common carrier, transported locally in Oregon various shipments of aluminum articles for plaintiff manufacturer, Anodizing, Inc.

The shipments consisted of bundles of extruded aluminum items of various lengths. In its shipping documents tendered to defendant, plaintiff variously described the articles as "bundles of aluminum extrusions," "bundles of aluminum extrusion windows,"

"aluminum extrusion door frames" and "aluminum lineal shapes." The record provides no basis for determining the frequency with which plaintiff used any particular description.

Defendant rated the shipments at 85 under Item 1020 of Oregon Draymen and Warehousemen's Tariff No. 3-D, pertinent parts of which provide:

EXCEPTIONS TO GOVERNING CLASSIFICATION

| Item No. | Article | LTL Rating |
|---|---|---|
| 1020 | Aluminum, Viz.: | |
| | Angles, Loose (only if weighing 25 lbs. each or over) or in packages. | 70 |
| | Bars, loose (only if weighing 15 lbs. each or over) or in packages. | 70 |
| | Blanks, stampings, or unfinished shapes NOI, nested or flat, or | |
| | Extrusions, NOI.: | |
| | Loose | 150 |
| | In Packages | 85 |
| | Plate or Sheet | 70 |
| | Rods, in packages | 70 |

The trial judge concluded that "[b]y its forming process the plaintiff's product is an aluminum extrusion. However, it is not an Extrusion NOI ['not otherwise indexed more specifically by name in the classification'], as defined in Item 1020 of the Oregon Draymen & Warehousmen's Association City Cartage Tariff because the National Motor Freight Classification A-13 tariff, which is also binding upon the defendant does, in fact, otherwise index the product as a 'lineal shape.' "[1]

---

[1] The complete entry in the National Motor Freight Classification A-13 reads:

"LTL  TL  **

" * * * * *

"ALUMINUM subject to item 13100:

" * * * * *

The trial judge accordingly found that plaintiff was entitled to a judgment for the amount of excess charges alleged in the complaint.

For reasons which follow, we conclude that the trial court erred in applying the national tariff rather than the local tariff.

An examination of the decisions in this highly technical and complex field of the law indicates the following:

The National Motor Freight Classification is a large national publication establishing ratings for thousands of articles moving in commerce via motor carrier throughout the nation generally. It functions as a national price list of motor common carrier services. Most motor common carriers, in publishing rate tariffs, adopt the national classification by reference as a general standard for rating items placed with them for transport. Rating the items is the first step preliminary to calculation of applicable rates and charges.

In addition, most motor carriers also publish, as part of rate tariffs applying locally within their own service areas, various exceptions to the national classification rating to accommodate local transportation conditions. The Oregon Draymen 9 warehousmen's Cartage Tariff referred to earlier is such an exception. Local exceptions ratings published in the local tariff of a motor common carrier take precedence over and displace a rating appearing in the National Motor Freight Classification. Such local ratings continue to

---

"13515 Lineal Shapes, NOI, other than pipe,
conduit or tubing; or Molding; roll
formed or extruded, see Note, item
13517, loose (LTL, only if weighing
each 25 pounds or over) or in packages,
see Note, item 13518:
Sub 1 in straight lengths of uniform cross-sectional
dimension or configuration, not in coils...60
45 302"

enjoy precedence over national rating so long as they remain in the local tariff.

The applicable rule was stated in *Vegetable Oil Shortening-Ivory-Dale-Chicago,* 49 MCC 715, 718 (1949), as follows:

"It is elementary that generally, on the same articles and between the same points, rates derived from classification exceptions ratings supersedes (sic) rates derived from classification ratings, and that rates contained in commodity-rate tariffs supersede the other two. * * *"

Again, in *Descriptions, Castings and Forgings, Central Territory,* 51 MCC 441, 446 (1950):

"* * * So long as an article is clearly embraced in an exceptions item, and where neither the tariff nor the governing classification indicates a contrary intention, the exceptions item takes precedence, even though the description in the classification is more specific."

Plaintiff relies on *Line Material Co. v. Hinchcliff,* 43 MCC 323 (1944), for the proposition that more specific descriptions in the National Classification supersede local exception ratings. Assuming arguendo that this case actually holds that "more specific" descriptions in the National Classification supersede local ratings, it is clearly contrary to the rule expressed in *Vegetable Oil Shortening-Ivorydale-Chicago,* and *Descriptions, Castings and Forgings, Central Territory.* Both of the latter are later cases and must be deemed to have overruled *Line Material v. Hinchcliff, supra* on this point. Certainly the majority of the cases we have examined support the rule followed in *Vegetable Oil Shortening* and *Descriptions, Castings and Forgings,* both discussed *supra. See Barrows Porcelelain Enamel Co. v. Cushman,* 11 MCC 365, 369 (1939); *Glen L. Martin Co. v. W. T. Cowan, Inc.,* 44 MCC 728 (1945); *Bendix Aviation Corp. v. Tucker Frt. Lines,* 47 MCC 215 (1947); *Park and Tilford Distrs. v. United Frt. Lines,* 46 MCC 735 (1947).

Plaintiff also contends that where two descriptions and tariffs are equally appropriate, the shipper is entitled to have applied the one specifying the lower rates, citing *United States v. Gulf Refining Co.,* 268 US 542, 45 S Ct 597, 69 L Ed 1082 (1925).

An examination of the above case shows that the rule stated has no application here, since it involved the internal interpretation of general-versus-specific provisions of a single tariff, rather than the rule of national classification-versus-local tariff-exceptions we are dealing with here.

*Gulf* involved a criminal prosecution of the defendant oil company under the federal Elkins Act for allegedly receiving tariff concessions from the railroad through shipping its petroleum product as "unrefined naphtha" and not as "gasoline" under a tariff allowing a lower rate for the one than the other. The defendant was tried and convicted in the district court. The Eighth Circuit Court of Appeals, however, reversed.

The United States Supreme Court, after reviewing the evidence, concluded that the evidence established that the shipments in question were not "gasoline" but "naphtha" within the meaning of the railroad tariff applicable. In affirming the Court of Appeals, the Supreme Court stated:

"Where a commodity shipped is included in more than one tariff designation, that which is more specific will be held applicable. *U.S. Industrial Alcohol v. Director General,* 68 I.C.C. 389, 392; *Augusta Veneer Co. v. Southern Ry. C.,* 41 I.C.C. 414, 416. And where two descriptions and tariffs are equally appropriate, the shipper is entitled to have applied the one specifying the lower rates. *Ohio Foundry Co. v. P., C., C. & St. L. Ry. Co.,* 19 I.C.C. 65, 67; *United Verde Copper Co. v. Pennsylvania Co.,* 48 I.C.C. 663."

We do not challenge the correctness of the general principles above set forth. We simply say, as we have just pointed out, that they have no application under the facts in the case at bar.

Directing our attention once more to the facts now before us, according to testimony offered by defendant, the city cartage tariff is prepared by a standing committee of the affected local carriers called the Oregon Draymen and Warehousmen's Association; that tariff proceedings are conducted by the committee approximately every other month. Defendant's president, John J. Mathews, testified that he had served on the Oregon association's rate-making committee for 23 years as well as on the National Motor Freight Classification Committee for ten years; that after he learned of the present dispute he had invited plaintiff to join him in going before the Oregon committee to attempt to resolve the dispute, but that plaintiff never utilized its right to request a change in rate nor accepted his invitation to appear together before the local tariff publishing agency.

There was no evidence offered by plaintiff that the affected local carriers had ever manifested any intention to change the application of the local item; the evidence offered by the defendant on this point was that the drafters of the local tariff exception had clearly intended the local tariff to control. We are unable to accept plaintiff's construction that the national tariff for the item applies to the articles in issue.

The error of the trial court was in treating the local and national tariffs on an equal footing and in depriving the local tariff of its intended preference under the above authorities. Even where, as here, the articles may logically be transported or moved under either the local or national classification, the cases hold that giving the local tariff precedence is the proper and controlling rule.

Lastly plaintiff argues that the trial court's interpretation of the tariff's classification issue is a finding of fact which is binding on this court. We disagree. This is a matter of legal interpretation of these tariffs rather than a finding of fact. It is analogous to a situation wherein a court must decide which of

two statutes controls in a particular controversy. *See Buschke v. Dyke,* 197 Or 144, 150, 251 P2d 873 (1953).

Reversed.